UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

SILVER MOUNTAIN DEVELOPMENT,
INC., an Oregon corporation,

          Plaintiff,

vs.

CITY OF SILVERTON, an Oregon
municipality

          Defendant

Case No. 6:21-cv-00809-MK

**OPINION AND ORDER**

**KASUBHAI,** United States Magistrate Judge:

    Plaintiff, Silver Mountain Development Incorporated, filed this civil rights action against Defendant, City of Silverton, Oregon (the "City"), alleging violations of procedural and substantive due process under the Fourteenth Amendment. First Amended Complaint, ECF No. 25 ("FAC"). On December 19, 2022, the Court granted the City's Motion For Judgment On The Pleadings regarding Plaintiff's procedural due process claim and denied the City's Motion regarding Plaintiff's substantive due process claim *Silver Mountain Dev., Inc. v. City of*

Page 1 — OPINION AND ORDER

*Silverton*, No. 6:21-CV-00809-MK, 2022 WL 17751700, at *9 (D. Or. Dec. 19, 2022). Currently before the Court is the City's Motion for Summary Judgment on Plaintiff's substantive due process claim. Def.'s Mot. For Summ. J., ECF No. 46 ("Def.'s Mot."). For the reasons that follow, the City's Motion For Summary Judgment is GRANTED.[1]

## BACKGROUND

This case involves a dispute related to the construction of a subdivision in Silverton, Oregon. Plaintiff is a developer and alleges that the City's modification of a traffic control plan was arbitrary, increasing costs and delaying construction in violation of Plaintiff's substantive due process rights. FAC ¶ 23–27.

In Oregon, a developer who wants to divide land into smaller lots can do so by submitting a preliminary plat for approval by the municipality. *See* Or. Rev. Stat. § 92.040. The preliminary plat shows, among other things, how the land will be divided and the proposed new public improvements necessary to serve the new lots, such as roads and other infrastructure. Piscadlo Decl. In Suppt. Of Def.'s Mot. Ex. 1, at 5, ECF No. 48; Silverton Municipal Code ("SMS") 4.3.130. A notice of decision approving the preliminary plat often contains conditions of approval that the developer must substantially comply with to receive the city's approval of the final construction. *Id.* at 7–8.

The City's Notice of Decision, approving the development of the preliminary plat at issue in this case, was subject to several conditions of approval ("Conditions of Approval"). Piscadlo Decl., Ex. 8 ("Notice of Decision"). Relevant here, the developer was required to make specific modifications and improvements to a section of the road adjacent to the subdivision development project, Ike Mooney Road ("the Road"). *Id.* at 2. Closing the Road during construction was not

---

[1] The parties consented to jurisdiction by U.S. Magistrate Judge on June 22, 2021. ECF No. 11.

discussed during the preliminary plat approval process, included in the development plans reviewed by the City, or a Condition of Approval. *Id.*; Piscadlo Decl., Ex. 3 at 5–6 ("Brennan Depo."); *see Silver Mountain Dev., Inc.*, 2022 WL 17751700, at *6. When Plaintiff purchased the property and accompanying development rights, it had not discussed any plans with the City about closing the Road during construction. Piscadlo Decl. Ex. 4, at 2.

Throughout development, the City maintained review of Plaintiff's compliance with the City's Public Works Designs Standards ("PWDS"). Notice of Decision at 4. Under PWDS 1.3(a)(2), the City was authorized to revise or supplement construction drawings if necessary to protect life, health, and property or if it determined that Plaintiff had not met the full requirements such as paying permitting fees and obtaining bonding prior to construction. PWDS 1.3(a)(2); FAC Ex. 2, ECF No. 25 (Notice of Decision Attachment G).

In early May 2018, Plaintiff sought the City's approval to fully close the Road during its construction. Emerick Decl. In Supp. Of Pl.'s Resp. To Def.'s Mot. Ex. A, at 14, ECF No. 54. Approval of a full Road closure, as opposed to a single lane closure with flagging operators, was important to Plaintiff for minimizing costs and increasing construction efficiency. As described in detail below, the record shows that the City's review of Plaintiff's Road closure proposals was wavering and unreliable, leading to the present action.

A. **May 2018 Full Road Closure Approval**

On May 9, 2018, Plaintiff emailed City and Marion County officials, proposing a full closure of the Road for four-and-a-half-months. *Id.* In an internal email discussing Plaintiff's initial proposal, the City's engineer wrote to the City's public works director (the "Director") stating that he understood Plaintiff's desire to close the Road during construction but that "4.5 months seems like a very long time and would be a very long inconvenience to the public." *Id.* at

12. The City's engineer recommended to the Director that Plaintiff "focus their efforts to install all underground utilities and street improvements in a timely manner so the road closure is kept to a minimum." *Id.* The Director replied, "I totally agree. When I saw the initial proposal I actually laughed out loud. I am going to tell them 45 days and see what happens." *Id.* The Director then emailed Plaintiff, rejecting Plaintiff's road closure proposal and stating:

> Should you desire to proceed with this request, the maximum allowable duration for the full closure of the City's roadway segment would be 45 calendar days and the traffic control plan will need to be revised to include multiple Changeable Message Signs as well as other notification methods and traffic control devices required by the County and City. . . . If we feel that their activities can be performed safely with single lane closures and flagging, we will require the work proceed in that manner.

*Id.* at 14. The following week, on May 14, 2018, Plaintiff submitted a revised road closure proposal, adding portable changeable message signs and requesting two closures, a 45 day closure followed by an approximately 21 day closure. *Id.* at 13.

On May 16, 2018, the Director replied to Plaintiff:

> After a detailed review of the project improvement plans and the proposed Ike Mooney closure by both the City of Silverton and Marion County, we have determined that a full closure of Ike Mooney for the requested period is not a justifiable option and will not be approved. However, in an effort to expedite the required roadway improvements, the City and County will allow a full closure for a period not to exceed 5 working days in order to perform the road reconstruction and paving operations related to this development. This approval is contingent on approval of traffic control and detour route plans by both the City of Silverton and Marion County.

*Id.*

Approximately one week later, the Director met with Plaintiff to discuss the road closure proposal. *Id.* at 19. Following that meeting, on May 25, 2018, the Director emailed County Officials, asking what the County's stance was on the proposal and what it had previously

communicated to Plaintiff. *Id.* The County's civil engineer replied that, prior to Plaintiff's proposal submission, he had discussed the closure with Plaintiff and communicated that the County would not support a three-month closure but "had been okay with up to 6 weeks." *Id.* The County's traffic engineering manager added, "[w]e always prefer that work be done under traffic whenever possible to preserve mobility. However, we reviewed their request [and] . . . told them that we are not opposed to a six week closure." *Id.* at 18. The Director then corresponded with the City's manager (the "City Manager") regarding the County's input and discussed requiring notification of the proposed closure to all emergency services. *Id.* at 17–18.

That same day, the Director emailed Plaintiff, stating that, after further review by the City Manager, the City would allow a one-time variance from its standards and would approve the proposed full closure for a maximum of 60 days. *Id.* at 20. The Road closure approval was subject to several express conditions, including: (1) reserving the City's right to preserve mobility throughout the closure time frame; (2) documented approval by Marion County Public Works; and (3) documented notification to all emergency services of planned closures. *Id.* at 20. The City is typically responsible for consulting with emergency services prior to approving a road closure. Emerick Decl. Ex. B, at 84. On July 24, 2018, the City's engineer approved the Road closure proposal. ECF No. Piscadlo Decl. Ex. 17. Emergency services had not been consulted. Fossholm Decl. In Suppt. of Def's Mot. Ex. 1, ECF No. 47 ("May 2019 Revocation Letter").

**B. September 2018 Exception To Bonding Requirement**

Under the Conditions of Approval, Plaintiff was required to provide a bond or proof of credit prior to the issuance of any public works permit. Notice of Decision at 4. On July 31, 2018, Plaintiff requested an exception, allowing it to perform roadway excavation work without bonding.

Piscadlo Decl. In Support Of Def.'s Reply Ex. 2, ECF No. 57. The City denied the request, citing the relevant municipal codes and standards that required bonding or proof of credit before issuance of a permit. *Id.* at Ex. 3. On Thursday, September 13, 2018, Plaintiff informed the City that it planned on starting roadwork excavation the following Monday, September 17, 2018. *Id.* at Ex. 4. Despite having not provided bonding or proof of credit, Plaintiff asked if it could proceed "if the grading permit is prepared and paid for tomorrow, and we pay the Public Works plan review and inspection fees[.]" *Id.* On September 19, 2018, the City responded, stating that it would allow an exception to the bonding requirement if four additional requirements were met. Walters Decl. Ex. 3, ECF No. 53. The City's letter continued, "[w]hen all of the items above are addressed and or submitted as described, the City will then give written permission to allow the contractor to begin to core out the new roadways." *Id.* at 2.

### C. May 2019 Revocations

Plaintiff's Response does not oppose Defendant's representation that, for various reasons, Plaintiff was not ready to begin construction on the portions of the project involving the Road closure until the following summer of 2019. In May 2019, the City's new engineer decided to revisit the prior decision to conditionally allow an exception to the bonding requirement. Emerick Decl. Ex. B at 15. On May 13, 2019, in consultation with legal counsel, the City explained that it had:

> some concerns with the plans that were previously approved with the outgoing City / Senior Engineer. Therefore, we had discussed re-reviewing [Plaintiff's] submittal to make sure there are no defects in the design ... since [Plaintiff's] design engineer that submitted these plans has a habit of trying to cut corners to save construction costs.

*Id.* at 27. The City sought legal advice about its options to either compel bonding or retroactively inspect the work that had already been completed. *Id.* Plaintiff then received notice from its

lender that it was required to obtain an irrevocable letter of credit to continue performing the roadway excavation work, incurring additional construction costs and delays. Walters Decl. at 3.

Also in May 2019, the City discovered that, in approving the 2018 Road closure proposal, it had not consulted with emergency services. *Id.* Plaintiff also had not contacted emergency services, which it was not required to do until the construction requiring the Road closure was scheduled. Brennan Depo. at 10. Upon this realization, the City notified Plaintiff that it had decided to revisit its 2018 approval of the Road closure. May 2019 Revocation Letter. On May 28, 2019, the City held a meeting with the Police Chief and the Fire Chief to discuss the potential impact of the Road closure on public health and safety. Fossholm Decl. At the meeting, emergency management articulated "concerns that, in the event of a dam failure, the closure would require area traffic to evacuate towards the flood inundation zone, and that the closure would add significant response time for life safety emergency responses and could severely limit emergency response times of police and fire." May 2019 Revocation Letter. The day after the meeting, the City notified Plaintiff that, had it known that emergency services were not consulted, it never would have approved the May 2019 Road closure proposal. *Id.* Furthermore, the City informed Plaintiff that it would be revoking its prior approval, and going forward, it would only consider single lane closure proposals. *Id.*

D. **August 2019 Revised Full Road Closure Approval**

In August 2019, without reconsulting with emergency services, the City subsequently approved a revised six week full closure of a portion of the Road. Emerick Decl. Ex. B, at 29. The Police Chief contacted the City when he found out that a full Road closure proposal had been approved without his consultation. *Id.* at 28. However, after reviewing the revised Road closure proposal approved by the City in August, the Police Chief concluded that it specifically

and adequately addressed the safety concerns articulated at the prior meeting. Fossholm Decl. # 2, ¶ 2. ECF 56.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

## DISCUSSION

The City asserts that it is entitled to summary judgment because there is no genuine dispute that the City's actions did not deprive plaintiff of a protected property interest. Def.'s Mot. at 11. Furthermore, the City asserts that even if it deprived Plaintiff of a protected property interest, there is no genuine dispute that its actions were rationally related to a legitimate

government interest and therefore, were not arbitrary. *Id.* Plaintiff opposes the City's Motion on both grounds. Pl.'s Resp. To Mot. For Summ. J. 2, ECF No. 52 ("Pl.'s Resp.").

Because the Court finds that the City's conduct was not constitutionally arbitrary, the Court need not decide whether the City interfered with Plaintiff's property interest in the preliminary plat. *See City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 198 (2003) ("We need not decide whether respondents possessed a property interest in the building permits, because the city engineer's refusal to issue the permits while the petition was pending in no sense constituted egregious or arbitrary government conduct.").

### A. Legal Standard — Substantive Due Process

The Due Process Clause of the Fourteenth Amendment "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). In order to establish a substantive due process claim, a plaintiff must show that the government's conduct (1) deprived it of a protected interest and (2) was constitutionally arbitrary. *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir. 1990).

Substantive due process challenges to government land use decisions must meet an "exceedingly high burden." *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008) (citation omitted). "The irreducible minimum of a substantive due process claim challenging land use action is failure to advance any legitimate governmental purpose." *Id.* To be constitutionally arbitrary, the government action must be egregious, amounting to an abuse of power lacking any reasonable "relation to the public health, safety, morals, or general welfare." *Vill. of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395 (1926). The 9th Circuit has stated that "[w]hen reviewing

the substance of legislation or governmental action that does not impinge on fundamental rights . . . we do not require that the government's action actually advance its stated purposes, but merely look to see whether the government *could* have had a legitimate reason for acting as it did." *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 66 (9th Cir. 1994). Substantive due process is not violated if it is "at least fairly debatable" that the city's decision is rationally related to a legitimate governmental interest. *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994) (quoting *Christensen v. Yolo County Bd. of Supervisors*, 995 F.2d 161, 165 (9th Cir.1993). In other words, if there is a rational relation to a legitimate government purpose, then it necessarily follows that the conduct is not constitutionally arbitrary.

A plaintiff may overcome a motion for summary judgment by presenting sufficient evidence that the city's actions were irrational. *Id.* at 1238. For example, a city acts irrationally when it approves a development project provided that fifteen conditions are met, the plaintiffs fulfill those conditions over an eighteen month period, and city council subsequently denies the permit, giving only broad and conclusory explanations that completely contradict its recent and specific findings. *Del Monte Dunes*, 920 F.2d 496; *see Lockary v. Kayfetz*, 917 F.2d 1150 (9th Cir. 1990) (water moratorium may be arbitrary where city has significantly increased provision of water to other parties); *see also Bateson v. Geisse*, 857 F.2d 1300 (9th Cir. 1988) (city's refusal to issue building permit is irrational where plaintiff meets all of the requirements for the permit and city regulations require the city to issue a permit in these circumstances).

**B. Analysis**

To support its assertion that the City acted arbitrarily during its review of Plaintiff's road closure proposals in May 2018, Plaintiff emphasizes the City's erratic decision-making process. Pl.'s Resp. at 14. The record shows that within a 16-day period, the City informed Plaintiff that it

would consider approval of a 45-day closure, then a 5-day closure, and then it granted conditional approval of up to 60 days. Furthermore, the Director wrote in an internal email at the time, that when he saw Plaintiff's initial four-and-a-half month closure proposal, he "laughed out loud" and decided "to tell them 45 days and see what happens." Emerick Decl. Ex. A, at 12. Although the City's wavering communications with Plaintiff about the duration of the closure was unpredictable and less than professional, the record shows that the City's review process had a rational relation to legitimate government interests. For example, the City informed Plaintiff during these initial correspondences of its legitimate interest in preserving mobility and indicated that it would not approve a full road closure if the Road work could be performed safely with a single lane closure instead. *Id.* at 14; Piscadlo Decl. Ex. 13, at 1.

      Plaintiff cites *Del Monte Dunes*, 920 F.2d at 1508, for the proposition that evidence of an abrupt rejection of a previously approved plan with only broad conclusory reasons creates a genuine issue of material fact regarding arbitrary government conduct. Pl.'s Resp. at 12–13. However, unlike in *Del Monte Dunes*, where the city reversed its decision, contradicting a recent and specific finding that the plaintiff had met the conditions of approval, 920 F.2d at 1506, here, the City decided to revisit its prior Road closure approval after it realized that emergency services had not been consulted. Thus, because the prior approval was based on incomplete information, there was no contradiction. The parties dispute who was responsible for consulting with emergency services prior to approval. However, the undisputed *material* fact is that the City's May 2019 revocation of permitting a full Road closure approval was reasonably related to emergency service's legitimate public safety concerns. The City's approval of a *revised* Road closure plan in August 2019, specifically addressed the previously articulated safety concerns and was unopposed by emergency services. This subsequent approval without re-consultation is

not evidence of irrational government conduct sufficient to survive a motion for summary judgment. Similarly, the City's decision to revisit the propriety of its decision to allow an exception to the bonding requirement was rationally related to ensuring ongoing compliance with the law.

Plaintiff's frustration with the City's unreliable decision making is understandable. Predictability is a cornerstone of our legal system. However, "substantive due process is not a 'font of tort law' that superintends all official decision making." *Shanks*, 540 F.3d at 1089 (quoting *Cnty. of Sacramento v. Lewis,* 523 U.S. at 847–48 n.8 (1998)). Based on the well-developed record in this case, the City's conduct is rationally related to legitimate government interests. Accordingly, because the City's conduct was not constitutionally arbitrary as a matter of law the City did not violate Plaintiff's substantive due process rights.

## CONCLUSION

For the reasons above, the City's Motion for Summary Judgment (ECF No. 46) is GRANTED.

DATED this 5th day of January 2024.

s/ Mustafa T. Kasubhai<br>
MUSTAFA T. KASUBHAI (He / Him)<br>
United States Magistrate Judge